STATE, RESPONDENT, *v.* HUGHES, APPELLANT.
No. 9265.
Submitted June 1, 1953. Decided November 6, 1953.
262 Pac. (2d) 804.

Mr. Justice Angstman dissented.

Doyle & Francisco, Conrad, for appellant.

Arnold H. Olsen, Atty. Gen., William F. Crowley, Asst. Atty. Gen., Bert W. Kronmiller, Sp. Asst. Atty. Gen., for respondent.

Mr. Doyle, Mr. Crowley and Mr. Kronmiller argued orally.

MR. JUSTICE ANDERSON:

The defendant appeals from a judgment entered upon a verdict of guilty of grand larceny of a heifer calf. The state, on December 7, 1951, charged the defendant with the theft of a Hereford heifer and, over the objection of defendant, the lower court allowed the information to be amended charging the defendant with stealing a heifer calf. The amendment was allowed after the defendant had pleaded not guilty to the information as originally worded and at the time the case was called for trial.

The facts as brought out by the testimony are substantially as follows: One Duard Pollock lost a brockle-faced cow with a brockle-faced calf during the early part of June 1949. At the

time the animals were lost the calf was a few weeks old. Mr. Pollock testified that the calf was branded with his brand and further testified that he recognized the calf which he had last seen when it was a few weeks old, when he saw it as a mature cow some two and one-half years later.

Vincent Ward testified that he had a conversation in Choteau with Mr. Pollock to the following effect: "Pollock told me that he didn't want to prosecute, that he wouldn't sign a complaint against Hughes, that he didn't know the animal it was at that time." Nowhere, although the opportunity was available to the state on rebuttal, did Mr. Pollock refute the testimony given by Vincent Ward.

The animal in question carried the brand of both Mr. Pollock and the defendant, and it is undisputed that attention given to the animal was brought about by the fact that the defendant sent the animal and ten others by truck to the public stockyard at Great Falls, Montana, to be sold. Mr. Pollock, though he had missed a calf in June of 1949, made no mention of its loss to the authorities and so far as the record is concerned the first notice the authorities had of the fact that Mr. Pollock missed a calf was when the defendant was unable to produce a bill of sale for one of the eleven head of cattle which were trucked to the stockyards in Great Falls.

At the time the defendant shipped the cattle to Great Falls he advised the trucker to have same inspected by the sheriff at Choteau. Inspection was made by the sheriff and the cattle were given a clearance. Obviously the sheriff at Choteau had no reason to question the ownership of any of the animals in view of the fact that Mr. Pollock had apparently never mentioned his alleged loss to him. Obviously there was no attempt on the part of the accused to conceal any of the animals.

The cattle upon arrival at Great Falls were inspected by the stock inspector and were thereafter sold. Subsequently the stock inspector mentioned to the defendant that one cow carried the brand of Mr. Pollock and defendant said he thought he had purchased that cow at Shelby, Montana, in 1948. Thereafter the

defendant made an effort to get the 1948 clearance sheet from Shelby, Montana, and upon receipt of same it was determined that while he had purchased certain cattle there, the cow in question was not listed on the clearance sheet.

Pollock first found out that a cow bearing his brand had been sold at Great Falls when the defendant told him on October 14, 1951, at which time the defendant said, using Mr. Pollock's words: "Well, he told me he had sold this *cow* and I thought perhaps he was going to give me the money for it. He didn't offer it and before he left he said he would split it with me."

The record discloses that the next time the defendant heard about the cow was on the 7th of December 1951 when he was charged with the theft of a Hereford heifer.

Much testimony was taken as to the brands on the cow and it it was confusing to say the least. The age of the cow was questioned and taking the testimony of the state's witnesses and the witnesses for the defense, the cow in question was at least three years old or older, and several witnesses said it was four years or older at the time of its death on March 27, 1952. No one witness or the text books on the subject placed the age of the cow under three years.

The calf which Mr. Pollock lost was from a month to six weeks old at the time he claims to have missed it, which was about the first of June 1949. Taking the minimum age the cow in question could have been at the time of its death, the animal Mr. Pollock lost would have been less than that age if the testimony of Mr. Pollock as to his lost animal's age is accurate.

Referring to the testimony of Dr. Raymond W. Gustafson, the state's witness, who placed the age of the animal, which defendant is accused of stealing, we find the following:

"Q. What age would that make it? A. *Positively three years and it has to be at least three years.*

"Q. I understand your testimony to * * * A. Three to three and a half years.

"Q. Yes. *So that it was born not later than March of the year 1949?* A. Yes." Emphasis supplied.

The testimony of the defense witness, Harry Van De Reit, who testified that he gained his knowledge from a book entitled "Veterinary Guide," defendant's exhibit No. 12, says that the cow in question was over four years old at the time of its death.

It is apparent that the animal that belonged to Mr. Pollock was born in the latter part of April or the first of May 1949, which would make it less than three years old at the time of the death of the cow in question.

The only other evidence, attempting to identify the cow, came from Duard Pollock. In answer to questions, Mr. Pollock said that he recognized the cow as being the calf that he had seen when it was a few weeks old. Two and one-half years had elapsed since he saw the calf he lost until he saw the animal in question. On cross-examination he was asked: "Q. You want to tell us you recognized it as the calf you saw two years before? A. From the characteristics of the mother and the *brockle-faced calf.*" Emphasis supplied. The state introduced the hide of the cow in question and we have before us the state's exhibits Nos. 5, 6 and 9 which are pictures of the animal, and the cow, if the pictures are accurate, is not in any respect a brockle-faced animal. The cow's face is pure white.

The above testimony, plus the fact that Mr. Pollock did not deny the testimony of Mr. Ward to the effect that he did not want to prosecute, that he wouldn't sign a complaint against Hughes, that he didn't know the animal it was at the time, raises grave doubt as to the credibility that should be given his story.

This court has said before, though a witness is not discredited by direct evidence impeaching or contradicting his statement, the inherent improbability of his testimony may deny it all claims to respect. Casey v. Northern Pac. Ry. Co., 60 Mont. 56, 198 Pac. 141.

In the instant case we not only have direct evidence contradicting Mr. Pollock's statement but the inherent improbability that one would recognize a cow nearly three years old which he had not seen since it was a month old calf. Not only was Mr. Pollock's

statement contradicted by another but his own testimony was contradictory of the conclusion he reached.

In prosecutions for larceny, the identity of the thing stolen ▮ must be established beyond a reasonable doubt by either direct or circumstantial evidence. However, when proof of circumstances is resorted to, it must measure up to the standard required by law. 52 C. J. S., Larceny, sec. 132, p. 967.

It seems clear that no positive testimony on the question of identity of the cow was placed in the record. For us to hold that the proof of identity by circumstances was sufficient in the instant case, it would be necessary for us to indulge the presumption that because Mr. Pollock lost a calf in June 1949 the cow here in question was in fact that animal.

The state failed in its proof that the hide and head of the ▮ cow introduced in evidence came from the animal which Mr. Pollock said he lost in June of 1949 and the evidence therefore was insufficient to justify a verdict of guilty.

The practice of alleging the commission of a crime on or about the 10th day of October 1951 and then proving its commission two and one-half years earlier is a dangerous practice and should be resorted to only when circumstances do not permit another course.

The cause is reversed with directions to dismiss the information.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY and FREEBOURN, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

In my opinion there was sufficient evidence, direct and circumstantial, to show that the animal from which the hide and head were produced was the Pollock calf born in the spring of 1949 to make the question of identification one for the jury. The weight of the evidence and the credibility of the witnesses were for the jury to determine.

I think the verdict and judgment should be sustained.